Kellan Smith (SBN 318911)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
Phone: (510) 622-8214
Email: ksmith@publicjustice.net

*Attorney for Plaintiffs*

*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC JUSTICE FOUNDATION;<br>ANIMAL LEGAL DEFENSE FUND;<br>CENTER FOR BIOLOGICAL DIVERSITY;<br>CENTER FOR FOOD SAFETY;<br>FOOD & WATER WATCH,<br><br>     *Plaintiffs*,<br><br>   vs.<br><br>FARM SERVICE AGENCY,<br><br>     *Defendant*. | Case Number: <u>3:20-cv-1103</u><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1. This action is about government transparency and accountability. Plaintiffs are nonprofit advocacy organizations with a well-established track record of using information requests to challenge government abuses and corporate wrongdoing, advocate for policy change, and educate the public about issues with our food system. For nearly a decade, Plaintiffs have closely monitored the Farm Service Agency's (FSA) administration of federal farm loans and loan guarantees to ensure that taxpayer dollars are not propping up multinational corporations, bankrolling unsustainable and unethical industrial animal agricultural practices, or pushing independent farmers out of the marketplace.

2. As part of their oversight and advocacy work, Plaintiffs have individually and jointly submitted numerous requests for records regarding FSA's farm loan programs under the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)–(m) (2018). Without the requested records, Plaintiffs cannot determine whether FSA's farm loan programs comply with applicable laws, such as the National Environmental Policy Act (NEPA), 42 U.S.C §§ 4321–47m (2018).

3. However, although FOIA requires FSA to release responsive records "promptly," FSA consistently fails to comply with FOIA's statutory deadlines with respect to Plaintiffs' requests. Further, FSA has repeatedly misapplied FOIA's specific and narrow exemptions to nonexempt information. Consequently, FSA has improperly withheld thousands of pages of responsive records, depriving Plaintiffs of their statutory right to obtain records containing crucial information about federal farm loans for nearly a decade without penalty.

4. FSA's longstanding pattern and practice of improperly withholding responsive records prevents Plaintiffs from overseeing FSA's administration of farm loan programs, and educating the public about FSA's activities and use of taxpayer funds. Further, FSA's consistent failure to release records obfuscates the agency's acquiescence to industrial polluters at the expense of independent farmers, public health, and the environment.

5. Plaintiffs respectfully ask this Court to enjoin FSA from withholding requested records, order FSA to release improperly withheld records, and grant declaratory relief. Plaintiffs also ask this Court to enjoin FSA from continuing to engage in its pattern and practice of violating FOIA.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1

**JURISDICTION**

2      6.   This Court has subject matter jurisdiction over this action because the claims arise under

3   a federal statute. *See* 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1331.

4      7.   This Court also has personal jurisdiction over the parties because Plaintiff Animal Legal

5   Defense Fund's headquarters and principal place of business is located in Sonoma County,

6   which is in the Northern District of California. *See* 5 U.S.C. § 552(a)(4)(B).

7

**VENUE**

8      8.   This Court is also the proper venue for this action because Plaintiff Animal Legal

9   Defense Fund sent its FOIA requests to FSA, exchanged related correspondence, and received

10   FSA's responses from its headquarters in Sonoma County, California. Thus, a substantial part of

11   the events giving rise to this action occurred in Sonoma County, which is in the Northern District

12   of California. *See* 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 1391(e); Civil L.R. 3-2(c).

13

**INTRADISTRICT ASSIGNMENT**

14      9.   Because a substantial part of the events giving rise to this action occurred in Sonoma

15   County, this action is properly assigned to the San Francisco Division. Civil L.R. 3-2(c), (d).

16

**PARTIES**

17   *__Plaintiffs__*

18      10.   Plaintiff **Public Justice Foundation** (Public Justice) is a nonprofit legal advocacy

19   organization committed to fighting injustice, challenging corporate wrongdoing and government

20   abuses, and protecting the Earth's sustainability. Public Justice's Food Project specifically aims

21   to dismantle harmful industrial animal agricultural practices, promote corporate and government

22   transparency in the food system, and support a fair market where independent farmers can

23   compete and thrive. For nearly a decade, Public Justice has been committed to gathering and

24   disseminating information about FSA's administration of federal loans to industrial animal

25   production operations. To this end, Public Justice has submitted several FOIA requests for

26   records regarding FSA's farm loan programs and internal FOIA policies. However, because FSA

27   has repeatedly failed to release responsive records, Public Justice has not yet been able to

28   determine how FSA administers federal funding to industrial animal production operations, or

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1   contribute to the public's understanding of FSA's administration of federal farm loan programs

2   and NEPA compliance. As such, FSA's improper responses hinder Public Justice's advocacy and

3   oversight efforts, and prevent the public from gaining important insight into FSA's funding of

4   industrial animal agricultural operations. Because there is no other way to access this

5   information, and Public Justice has a continued interest in FSA's funding of industrial animal

6   agricultural operations, Public Justice has concrete plans to submit additional FOIA requests to

7   FSA for records regarding its farm loan programs. Thus, unless this Court grants the requested

8   relief, FSA will continue its pattern and practice of improperly withholding nonexempt

9   information, thereby depriving Public Justice of its statutory right to agency records and

10   stymieing Public Justice's advocacy and oversight efforts.

11       11.    Plaintiff **Animal Legal Defense Fund** (ALDF) is a nonprofit organization whose

12   mission is to protect the lives and advance the interests of animals through the legal system.

13   ALDF works to achieve its goals by filing lawsuits, administrative comments, and rulemaking

14   petitions to increase legal protections for animals; supporting strong animal protection

15   legislation; and fighting against legislation that is harmful to animals. ALDF seeks to ensure

16   transparency in the Concentrated Animal Feeding Operation (CAFO) system, specifically, which

17   is paramount to its ability to protect farmed animals and ALDF members from CAFOs'

18   immensely harmful effects. ALDF relies on and regularly seeks information through FOIA for its

19   legal advocacy and in furtherance of its mission. ALDF has submitted numerous FOIA requests

20   to various FSA offices regarding its administration of farm loans to CAFOs and slaughterhouses,

21   and ALDF plans to continue doing so. In addition to using this information for legal advocacy

22   (*e.g.*, *Dakota Rural Action v. FSA*, No. 18-cv-2852 (D.D.C. filed Dec. 5, 2018)), ALDF also

23   shares this information with its members and the public. For example, ALDF compiled the

24   information it received through FOIA to create a map of CAFOs in Indiana, which is accessible

25   to the public through ALDF's website (https://aldf.org/project/concentrated-animal-feeding-

26   operations-indiana). FSA's improper responses and history of disregarding ALDF's rights under

27   FOIA hinder ALDF's advocacy and oversight efforts by making it more difficult for ALDF to

28   determine how FSA operates in this industry, how it spends public funds, and how it administers

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
4 of 45

1    loans under federal law to industrial animal agriculture operators. This in turn prevents ALDF

2    from sharing this information with its members, affected communities, and the public, thereby

3    depriving them of important insight into FSA's funding of this industry. Unless this Court grants

4    the requested relief, FSA will continue its pattern and practice of failing to adhere to FOIA's

5    requirements and improperly withholding nonexempt information, thereby depriving ALDF of

6    its statutory right to agency records and stymieing ALDF's advocacy and oversight efforts and

7    ability to achieve its mission.

8        12.    Plaintiff **Center for Biological Diversity** (CBD) is a national, nonprofit conservation

9    organization whose mission is to ensure the preservation, protection, and restoration of

10   biodiversity, native species, ecosystems, public lands and water, and public health through

11   science, policy, and law. Based on an understanding that the health and vigor of human societies,

12   plants and wildlife, and the natural environment are deeply intertwined, CBD strives to protect

13   and secure a future for all species, great and small, hovering on the brink of extinction. Part of

14   that mission is expressed through CBD's Environmental Health program, which seeks to protect

15   biodiversity and human health from toxic pollution—including toxic and otherwise harmful

16   agricultural pollution—while promoting a deep understanding of the inextricable connection

17   between the health of humans and all other species. Informing the public about the activities of

18   the federal government is central to CBD's mission and the goals of its Environmental Health

19   Program. To that end, CBD educates and counsels its members and the public on environmental

20   issues, policies, and laws through media, advocacy, its website, and publications that are widely

21   distributed. CBD and its over 74,000 members are harmed by Defendants' violations of FOIA

22   because such violations preclude CBD from obtaining information about FSA's review and

23   approval of federal farm loans to industrial animal production operations, including its internal

24   policies related to conducting and finalizing such reviews, and the harmful environmental and

25   human health effects of these approvals. Defendants' failure to comply with FOIA harms CBD's

26   ability to provide full, accurate, and current information to the public on a matter of public

27   interest. Absent this information, CBD cannot advance its mission to protect native species and

28   their habitats, and advocate for steps to reduce threats to public health and the environment.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

13. Plaintiff **Center for Food Safety** (CFS) is a nonprofit environmental and consumer advocacy organization that works to address the impacts of our food production system on human health, animal welfare, and the environment. CFS's industrial animal agriculture program uses regulatory action, citizen engagement, litigation, and legislation to promote transparency and accountability in the animal agriculture industry. Through this work, the program aims to reduce the harmful impacts of industrial factory farm facilities on animal welfare, the environment, and human health to increase consumer awareness, availability, and accessibility of suitable alternatives by highlighting humane, organic, and pasture-based animal raising practices and producers. CFS uses FOIA to acquire information about how federal agencies operate and whether they are fulfilling their obligations under federal law. To that end, CFS has a keen interest in whether agencies like FSA comply with federal environmental laws before approving loans to industrial factory farms. In the past, CFS has experienced substantial delays in attempting to obtain FSA documents through FOIA. CFS expects similar delays in future FOIA requests as it is apparent that FSA has a pattern and practice of delaying the release of information related to its funding of industrial factory farms. Such delays frustrate CFS's mission to promote transparency and accountability in the animal agriculture industry. Thus, unless this Court grants the requested relief, FSA will continue its pattern and practice of disregarding CFS's rights under FOIA, thereby hindering CFS's advocacy and oversight efforts by preventing CFS from gaining valuable insight into FSA's administration of federal loans to industrial factory farms, and sharing this insight with the public and affected communities.

14. Plaintiff **Food & Water Watch** (FWW) is a national, nonprofit membership organization that mobilizes regular people to build political power to move bold and uncompromised solutions to the most pressing food, water, and climate problems of our time. FWW uses grassroots organizing, media outreach, public education, research, policy analysis, and litigation to protect people's health, communities, and democracy from the growing destructive power of the most powerful economic interests. Combating the harms associated with industrial livestock production, also known as factory farming, is one of FWW's priority issues, and FWW is engaged in several campaigns to reduce these industrial facilities' pollution through

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

stronger regulation and enforcement, increased transparency, and public education and engagement. As part of these campaigns, FWW works to ensure FSA meets its obligations to conduct proper environmental reviews and to hold it accountable for the consequences of its agency actions. FWW and its members have a strong interest in obtaining, in a timely manner, information related to the Federal government's activities to finance and promote factory farms. Since at least 2016, FWW has sought such information from FSA by submitting FOIA requests for records regarding FSA loans or loan guarantees to factory farms. However, because FSA inappropriately delayed the release of and withheld and redacted responsive records, FWW's efforts have been stymied and it has been unable to gain the understanding of FSA's funding of factory farms necessary to pursue its mission and inform and empower impacted communities. FWW intends to again seek records from FSA through FOIA requests in the future as part of its ongoing factory farm campaigns, and will again be stymied so long as FSA continues its pattern and practice of inappropriately delaying the release of responsive records or withholding or redacting such records.

### ***Defendant***

15.    Defendant **Farm Service Agency** (FSA) is a federal "agency" within the U.S. Department of Agriculture (USDA) and thus subject to FOIA. 5 U.S.C. § 552(f)(1). FSA is responsible for administering direct farm loans to eligible agricultural producers or landowners, and farm loan guarantees to eligible lenders. FSA is also responsible for ensuring that its farm loan programs comply with NEPA, 42 U.S.C. § 4332(c), and other applicable laws. Before FSA provides financing for a proposed agricultural action, such as the construction of a concentrated animal feeding operation (CAFO), FSA must review the proposed action, determine the potential environmental impacts, and conduct further analysis as necessary. Thus, FSA is the "agency" that has control and possession of the requested "record[s]" at issue here. 5 U.S.C. § 552(f)(2).

### STATUTORY BACKGROUND

16.    Congress enacted FOIA to promote government transparency and accountability. *See, e.g.*, *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (noting that "disclosure, not

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
7 of 45

1    secrecy is the dominant objective of the Act"). To this end, FOIA establishes the public's right

2    "to pierce the veil of administrative secrecy" and access federal agency records. *Id.*

3        17.    FOIA requires federal agencies to release requested records to the requester, unless the

4    records fall under one of the statute's nine enumerated exemptions, which "were explicitly made

5    exclusive" and "must be narrowly construed" in keeping with FOIA's presumption in favor of

6    disclosure. *Milner v. Dep't of Navy*, 562 U.S. 562, 566 (2011).

7        18.    FOIA imposes stringent deadlines on federal agencies regarding initial determinations

8    in response to FOIA requests. Within twenty working days of receiving a proper FOIA request,

9    an agency must determine whether it will release the requested records, and notify the requester

10   of the agency's determination, the reasons for its decision, and the requester's right to appeal an

11   adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A).

12       19.    An agency's initial determination "must be more than just an initial statement that the

13   agency will generally comply with a FOIA request and will produce non-exempt documents and

14   claim exemptions in the future." C*itizens for Responsibility & Ethics in Wash. v. Fed. Election*

15   *Comm'n* (*CREW*), 711 F.3d 180, 188 (D.C. Cir. 2013).

16       20.    If an agency does not comply with "FOIA's explicit timelines [for making an initial

17   determination], the penalty is that the agency cannot rely on the administrative exhaustion

18   requirement to keep cases [out of] court." *Id.* at 190–91; *see also* 5 U.S.C. § 552(a)(6)(C)(i). The

19   requester thus has "immediate recourse to the courts to compel the agency's response to [her]

20   FOIA request[s]." *Oglesby v. Dep't of Army*, 920 F.2d 57, 64 (D.C. Cir. 1990).

21       21.    To "trigger the administrative exhaustion requirement," an agency must complete "at

22   least" three substantive requirements: "(1) gather and review the documents; (2) determine and

23   communicate the scope of the documents it intends to produce and withhold, and the reasons for

24   withholding any documents; and (3) inform the requester that it can appeal whatever portion of

25   the 'determination' is adverse." *CREW*, 711 F.3d at 188; *see also Oglesby*, 920 F.2d at 67

26   (finding that an agency's response did not trigger exhaustion requirement because "merely

27   inform[ing] [the requester] that he could call the agency for further information . . . did not

28   qualify as notice of . . . right to appeal").

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

22.   Anytime an agency makes a determination to comply with a request, the agency must make the records "promptly available," 5 U.S.C. § 552(a)(3)(A), (6)(C)(i), "which . . . typically . . . mean[s] within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188; *see also Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) (holding that an agency's unreasonable delay in disclosing nonexempt records violated FOIA, and "courts have a duty to prevent these abuses").

23.   FOIA also requires agencies to provide requestors "information about the status of [a request]," including "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

24.   In addition, FOIA requires agencies to waive fees whenever "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id*. § 552(a)(4)(A)(iii).

25.   FOIA further requires an agency to "make reasonable efforts to search for responsive records," *id.* § 522(a)(3)(C), using methods "reasonably calculated to uncover *all* relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (emphasis added); *see also Oglesby*, 920 F.2d at 68 (An "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.").

26.   Likewise, "if an agency has reason to know that certain places may contain responsive documents," the agency must search those places. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1083 (N.D. Cal. 2015) (holding that an agency's search was inadequate because it failed to search places it "had reason to know . . . contained responsive documents").

27.   The agency bears the burden of demonstrating in reasonable detail that the "search terms and type of search performed" was likely to uncover *all* responsive records. *Oglesby*, 920 F.2d at 68; *see also Our Children's Earth Found.,* 85 F. Supp. 3d at 1082 (holding that an agency must submit affidavits describing "what records were searched, by whom, and through what process" to satisfy burden).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
9 of 45

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28.     The agency must also demonstrate that the scope of the agency's search was adequate. In tailoring the scope of the search, an agency "ha[s] a duty to construe FOIA records requests liberally." *Yagman v. Pompeo*, 868 F.3d 1075, 1079 (9th Cir. 2017) (holding that the scope of a request is clear so long as it provides "*some* reasonable description" of the requested records, such as times, dates, locations, types of documents, or types of information) (emphasis in original); *see also Law. Comm. for Civ. Rights of S.F. Bay Area v. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1130–31 (N.D. Cal. 2008) ("[A]n agency cannot withhold a record that is reasonably within the scope of the request on the grounds that the record has not been specifically named by the requester.").

29.     Although an agency can ask requestors to "downsize the scope of [a] FOIA request," an agency cannot "demand . . . specific modifications as a condition for any response." *Pub. Emps. for Envtl. Resp. v. EPA*, 314 F. Supp. 3d 68, 78 (D.D.C. 2018) (holding that the requestor's "refusal to drop [part of reasonably clear request] does not excuse the agency's obligation to respond").

30.     Once an agency identifies a responsive record, the agency must disclose the entire record "as a unit," unless a statutory exemption allows the agency "to redact specific information within [the record]." *Am. Immigr. Law. Ass'n v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 677 (D.C. Cir. 2016); *see also* 5 U.S.C. § 552(a)(3)(A), (d). An agency cannot "redact particular information within the responsive record on the basis that the information is non-responsive." *Am. Immigr. Law. Ass'n*, 830 F.3d at 678.

31.     An agency must construe FOIA's nine enumerated exemptions "narrowly." *Milner*, 562 U.S. at 565. An agency can only withhold information in a responsive record "if the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in [FOIA]" or "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A).

32.     FOIA Exemption 3 allows agencies to withhold records "specifically exempted from disclosure by [certain] statute[s]." *Id.* § 552(b)(3). Exemption 3 only applies when an agency (1) relies on a statute that "qualifies as a withholding statute under Exemption 3"; and (2) withholds

1  "information that falls within the scope of the withholding statute." *CIA v. Sims*, 471 U.S. 159,

2  168–69 (1985); *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007).

3     33.   FOIA Exemption 6 allows agencies to withhold "personnel and medical files and

4  similar files" when the disclosure of such information "would constitute a clearly unwarranted

5  invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 only applies when (1) the

6  requested information is a personnel, medical, or similar file; (2) there is a significant privacy

7  interest at stake; and (3) the privacy interest outweighs the public interest in disclosure. *Rojas v.*

8  *FAA*, 941 F.3d 392, 404–07 (9th Cir. 2019).

9     34.   A "similar file" is a "record[] containing information that applies to particular

10  individuals." *Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1133 (9th Cir. 2014). If a record

11  contains information about a particular individual that is "a matter of public record," or if a

12  document "do[es] not disclose personal information about [the individual]," Exemption 6 does

13  not apply. *Gordon v. FBI*, 390 F. Supp. 2d 897, 902 (N.D. Cal. 2004) (holding that an agency

14  improperly redacted the names of agency employees). Moreover, even when there is a privacy

15  interest at stake, and the individual's privacy interest outweighs the public interest, "even

16  personal information must be disclosed unless doing so is 'clearly unwarranted.'" *Kowack*, 766

17  F.3d at 1133 ("The only public interest we consider is the extent to which disclosure of the

18  information sought would she[d] light on an agency's performance of its statutory duties or

19  otherwise let citizens know what their government is up to.").

20     35.   The agency bears the burden of proving that it properly withheld records or portions of

21  records under one of FOIA's enumerated exemptions. 5 U.S.C. § 552(a)(4)(B). To satisfy this

22  burden, the agency must submit affidavits with "reasonably detailed descriptions of the

23  [withheld] documents" and "allege facts sufficient to establish an exemption." *Lewis v. IRS*, 823

24  F.2d 375, 378 (9th Cir. 1987).

25     36.   Further, if information contained in a document falls within one of FOIA's enumerated

26  exemptions, an agency cannot simply withhold the entire document. *See Hamdan v. DOJ*, 797

27  F.3d 759, 778–79 (9th Cir. 2015) (noting that courts must "make a specific finding that no

28  information contained in each document or substantial portion of a document withheld is

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
11 of 45

segregable"). An agency must take reasonable steps to segregate and disclose "all reasonably segregable portions of a [withheld] document." *Id.*; 5 U.S.C. § 552(a)(8)(A)(ii).

37.   If the agency cannot sufficiently justify withholding records in full or in part, this Court has jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). This Court can also provide injunctive relief "to bar future [FOIA] violations that are likely to occur." *Long*, 693 F.2d at 909 (holding that "injunctive relief is appropriate . . . to prevent prolonged delays and repeated litigation over disclosure of the same type of documents in the future").

38.   Moreover, even if an agency has released all the requested records with respect to a specific FOIA request, a plaintiff can still seek declaratory or injunctive relief for the agency's pattern or practice of violating FOIA if (1) the agency's FOIA violation was "not merely an isolated incident"; (2) the plaintiff was personally harmed by the agency's pattern or practice; and (3) the plaintiff is likely to be harmed by the agency's pattern or practice in the future. *Hajro v. U.S. Citizen. & Immigr. Serv.*, 811 F.3d 1086, 1103 (9th Cir. 2016). Plaintiffs can prove that the agency's FOIA violation was not an isolated event in "a number of ways," including, for example, "evidence that [they] ha[ve] been subjected to a FOIA violation more than once," or "affidavits of people similarly situated to the plaintiff[s] who were also harmed by the pattern or practice." *Id.* at 1104.

## FACTUAL BACKGROUND

39.   Plaintiffs are nonprofit public interest organizations committed to building a more sustainable and ethical food system. To this end, Plaintiffs rely on FOIA requests to monitor agency action and open agency and corporate wrongdoing to public scrutiny.

40.   For more than a decade, Plaintiffs have been particularly concerned about the extent to which FSA's farm loan programs support industrial animal agricultural operations that are harming animals, the environment, public health, and local communities. However, FSA's administration of farm loan programs has largely escaped public scrutiny because very little information regarding FSA's financial assistance programs is readily available to the public.

41.   To gain more information, Plaintiffs have submitted multiple FOIA requests for records relating to FSA's administration of federal farm loans, loan guarantees, and other assistance programs to industrial animal production operations. Plaintiffs often sought agency records regarding specific agricultural operations or geographical areas, and the scope of their requests were specifically aimed at uncovering whether FSA considers environmental impacts before awarding federal farm loans to an applicant, as required under NEPA, and whether FSA oversees the use of such funds after distribution.

42.   Without release of the requested information, Plaintiffs cannot determine whether FSA's farm loan programs comply with NEPA or other applicable laws. Nor can Plaintiffs inform the public about the environmental, economic, and public health impacts of FSA's financial activities.

43.   Despite the public's significant interest in understanding the environmental, economic, and public health impacts of FSA's farm loan programs in a timely manner, FSA has consistently failed to respond properly to Plaintiffs' FOIA requests. Specifically, FSA has regularly delayed determinations, communications, and actual productions of responsive records for months and, in some cases, years. Further, FSA has routinely withheld thousands of pages of nonexempt information by broadly construing and misapplying one or more of FOIA's nine, limited exemptions.

44.   Specifically, under Exemption 3, FSA has improperly withheld information that falls outside the scope of the claimed withholding statute, such as income/expense trends and environmental analyses and compliance determinations prepared by FSA farm loan officers.

45.   Similarly, under Exemption 6, FSA has improperly withheld information that does not raise a sufficient privacy interest to outweigh the substantial public interest in disclosure, such as maps and parcel data with no identifiable connection to a particular individual.

46.   FSA's long history of improperly handling Plaintiffs' requests for agency records establishes FSA's pattern and practice of disregarding FOIA's explicit requirements and deadlines, and unduly delaying actual production of records. Moreover, despite FOIA's "general philosophy of full agency disclosure," *Rose*, 425 U.S. at 360–61, FSA has a well-established

pattern and practice of violating FOIA by unlawfully withholding nonexempt information under Exemptions 3 and 6.

47.    FSA's pattern and practice of violating FOIA undermines the statute's clear "congressional objective" of "disclosure, not secrecy" and prevents Plaintiffs from "pierc[ing] the veil of administrative secrecy" and "open[ing] [FSA] action to the light of public scrutiny." *Id.* Thus, Plaintiffs urge this Court to grant the requested declaratory and injunctive relief to prevent continuing injury to Plaintiffs and the public.

### **FSA's History of Disregarding Plaintiffs' Rights under FOIA**

*Public Justice's March 2016 Request*

48.    FSA has a history of disregarding Public Justice's rights under FOIA.

49.    For example, on March 23, 2016, FSA received Public Justice's FOIA request for information relating to three specific animal feeding operations in Ohio.[1] Public Justice also requested a fee waiver because the released records would broaden public understanding of the federal government's oversight and regulation of industrial animal agriculture operations.[2]

50.    FSA responded to the request on August 24, 2017, more than a year after the agency received Public Justice's reasonably described request.[3] Despite the delay, FSA only released 6 pages in full, and 43 pages with substantial redactions under FOIA Exemptions 3 and 6.[4]

51.    FSA withheld information under Exemption 3, claiming that section 1619(b) of the Food, Conservation, and Energy Act (FCEA), 7 U.S.C. § 8791(b), exempted "information FSA obtained from . . . agricultural producer[s] or . . . landowner[s] that concerns their farming or agricultural operation[s], including . . . farming practices, conservation practices, or the land

---

[1] *See* Letter from David Muraskin, Food Project Attorney, Public Justice, to USDA FOIA Office (Jul. 8, 2015). USDA transferred the request to FSA on March 23, 2016.

[2] *Id.* at 2–4.

[3] Email from Gwen Sparks, Deputy Director, FSA, to David Muraskin (Aug. 24, 2017).

[4] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
14 of 45

1    itself."[5] However, FSA's description of the scope of the withholding statute is too broad because

2    the statute does not protect *all* information provided by agricultural producers or landowners, just

3    the information they provided "*in order to participate in [FSA's] programs*," *id.* § 8791(b)(2)(A)

4    (emphasis added), or "geospatial information otherwise maintained by the [FSA] about

5    agricultural land or operations for which [such] information . . . is provided," *id.* § (b)(2)(B).

6    Thus, FSA interpreted the withholding statute too liberally.

7        52.    Moreover, FSA relied on Exemption 3 to withhold information that is *not* provided by

8    agricultural producers or landowners, such as compliance determinations made by county

9    committees. Thus, FSA withheld information that fails to satisfy the specific criteria of the

10   withholding statute.

11       53.    Further, according to FSA, "[t]he type of information withheld [under 7 U.S.C. §

12   8791(b)] includes FSA loan participant's crop and acreage information."[6] However, such

13   information does not fall within Exemption 3 because it is segregable and disclosable statistical

14   or aggregate information and/or payment information. The withholding statute expressly allows

15   FSA to disclose information that "has been transformed into a statistical or aggregate form

16   without naming . . . individual owner[s], operator[s], or producer[s]," or "payment information

17   (including payment information and the names and addresses of recipients of payments) under

18   any . . . program that is otherwise authorized by law." *Id.* § (b)(4)(A), (B). Thus, FSA improperly

19   withheld nonexempt information under Exemption 3.

20       54.    FSA also claimed that Exemption 6 protected basic information about "FSA loan

21   participant[s]."[7] However, the withheld information does not fall within Exemption 6 because it

22   is not personal information linked to a particular individual. Further, because there is very little

23   publicly available information about FSA's farm loan programs, the public interest in disclosure

24   is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.

25

26   [5] *Id.*

27   [6] *Id.*

28   [7] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
15 of 45

55.   On November 21, 2017, Public Justice promptly appealed FSA's improper determination to withhold responsive records, pursuant to FSA's instructions.[8] The agency did not respond until July 3, 2019, nearly two years later.[9] In its response, FSA explained that despite initially "cit[ing] only one type of information under Exemption 3," Exemption 3 "applie[d] to *all* the material redacted" in the released records.[10] Although FSA expressly admitted that it had improperly redacted "address[es]" and other information "relating to business entities" under Exemption 6, FSA continued to withhold records under Exemption 3.[11] Thus, because the information initially redacted under Exemption 6 included segregable and disclosable statistical or aggregate information and/or payment information, FSA continued to improperly withhold nonexempt information under Exemption 3 on appeal.

***Public Justice's March 2017 Request***

56.   Likewise, on March 31, 2017, Public Justice submitted a request to FSA for records relating to livestock and poultry farms in specific Ohio zip codes.[12] Public Justice explained that it was entitled to a fee waiver because the requested records would "contribute significantly to public understanding" of FSA's role in funding industrial livestock and poultry operations.[13]

57.   FSA did not make a determination regarding the scope of its response within twenty working days of receiving Public Justice's request. Instead, on April 21, 2017, fourteen working

---

[8] Letter from Jessica Culpepper, Food Project Director, Public Justice, to FSA Appeals & Litigation Staff (Nov. 21, 2017).

[9] Letter from Patrick McLoughlin, FOIA Officer, to Jessica Culpepper (Jul. 3, 2019).

[10] *Id.* at 1 (emphasis added).

[11] *Id.* at 1–2.

[12] Letter from Jessica Culpepper to FSA FOIA Team (Mar. 31, 2017).

[13] *Id.* at 3–5.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
16 of 45

1    days after receiving the request, FSA unlawfully denied Public Justice's fee waiver request.[14]

2    Public Justice appealed the denial,[15] and FSA granted a waiver on July 17, 2017.[16]

3         58.    In February 2018, nearly a year after Public Justice submitted its record request, and

4    several months after Public Justice received a fee waiver, FSA sent three interim responses to

5    Public Justice.[17] In total, FSA released 206 pages in full, but withheld 2,555 pages in full and

6    745 pages in part under FOIA Exemptions 3 and 6.

7         59.    FSA failed to describe the scope of each exemption. FSA also failed to indicate which

8    statute it was relying on to withhold information under Exemption 3.

9         60.    According to FSA, the agency redacted a variety of information, including "maps,"

10   "legal descriptions of producer land," "income/expense trends," "photographs of producer land,"

11   "loan narratives" and "appraisals," and "parcel data." However, such information does not fall

12   within Exemption 6 because it is not personal information linked to a particular individual, and

13   the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt

14   information under Exemption 6.

15        61.    Although the third interim response noted that "[a]dditional responsive records [would]

16   be forthcoming,"[18] the agency ceased all communications with Public Justice for six months.[19]

17

18

---

19   [14] Letter from David Drake, Acting State Exec. Director, Ohio FSA State Office (Apr. 21, 2017).

20   [15] Letter from Jessica Culpepper to FSA Appeals & Litigation (Jun. 5, 2017).

21   [16] Letter from John W. Welch, Director, FSA Appeals & Litigation (Jul. 18, 2017).

22   [17] First Interim Response from Leonard J. Hubert, State Exec. Director, Ohio FSA State Office

23   (Feb. 1, 2018); Second Interim Response from Leonard J. Hubert (Feb. 2, 2018); Third Interim

24   Response from Leonard J. Hubert (Feb. 9, 2018).

25   [18] Third Interim Response, *supra* note 17, at 1; *see also* Email from Mimi Garringer,

26   Administrative Officer, Ohio FSA State Off., to Jessica Culpepper (Feb. 9, 2018, 13:17 EST)

27   (reiterating that "[t]here will be additional releases forthcoming").

28   [19] *See* Email from Jessica Culpepper to Cheryl Hinton (Aug. 2, 2018, 12:25 EST).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1
2

Finally, on August 9, 2018, after Public Justice sent multiple emails requesting a status update,[20] FSA claimed that "[it] ha[d] fully complied with [Public Justice's] request" in February.[21]

3
4
5

62.    FSA did not inform Public Justice of its right to appeal FSA's response.[22] Nonetheless, on November 7, 2018, Public Justice appealed FSA's inadequate response pursuant to the agency's regulations.[23] FSA has not yet completed the appeal or provided a status update.[24]

6
7
8
9

63.    FSA's history of disregarding Public Justice's rights under FOIA hinders Public Justice's advocacy and oversight efforts by preventing Public Justice from gaining valuable insight into FSA's administration of federal loans to industrial animal agriculture operators, and sharing this insight with the public, its supporters, and affected communities.

10

***ALDF's October 2017 Request***

11

64.    FSA has a history of disregarding ALDF's rights under FOIA.

12
13
14
15

65.    For example, on October 30, 2017, ALDF submitted a FOIA request to FSA for all environmental screening worksheets (FSA Form 860) that FSA had completed for "medium CAFOs" since August 3, 2016.[25] ALDF also requested a fee waiver because disclosure would significantly contribute to public understanding of FSA's NEPA process.[26]

16
17
18
19

---

20

[20] *See e.g., id.*; Email from Jessica Culpepper to Mimi Garringer (Aug. 2, 2018, 12:15 EST).

21

[21] Email from Cheryl Hinton to Jessica Culpepper (Aug. 9, 2018, 08:40 EST).

22

[22] *Id.*

23
24
25

[23] Letter from Jessica Culpepper to Richard Fordyce, Administrator, FSA Appeals & Litigation (Nov. 7, 2018); Letter from John Welch, Director, FSA Appeals & Litigation, to Jason Connor, Legal Fellow, Public Justice (Nov. 16, 2018).

26

[24] *See* Email from Jason Connor to Kimberly Morris (Apr. 6, 2019) (requesting a status update).

27

[25] Letter from Cristina Stella to Kent Politsh, Acting FSA FOIA Officer (Oct. 30, 2017).

28

[26] *Id.* at 1–3.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
18 of 45

66. On November 2, 2017, after FSA asked ALDF to narrow the scope of the request, ALDF agreed to limit the request to six states–California, Arkansas, Kansas, Oklahoma, Iowa, and New York–in order for the agency to process the request more quickly.[27]

67. Although ALDF clearly identified the forms sought in its original request, and ALDF agreed to further narrow the request for quicker processing, FSA asked ALDF to clarify "which type of environmental screening worksheets [it was] seeking (for which type of producer) and for which state," and claimed that it could not "proceed further . . . until [it] receive[d] additional written clarification."[28] Two weeks later, on November 30, 2017, FSA again contacted ALDF about some "confusion as to what documents [ALDF is] looking for and the date range," and asked ALDF to confirm that it was requesting all environmental screening worksheets completed for "medium CAFOs" since August 3, 2016.[29]

68. After ALDF simply confirmed that FSA had accurately "excerpted . . . the text of [ALDF's] original request,"[30] FSA informed ALDF that it had sufficiently "clarified" the request, and the agency deemed the request "perfected" on December 5, 2017, even though FSA merely restated the exact wording of the original request.[31] Thus, FSA delayed processing the request for more than a month by asking for unnecessary clarification.

69. On December 18, 2017, FSA responded to ALDF's FOIA request.[32] FSA uncovered 875 pages of responsive records, but only released 666 pages of responsive records in full. FSA withheld 209 pages in part under FOIA Exemptions 3 and 6.

---

[27] Email from Cristina Stella to Barbara McLean (Nov. 2, 2017).

[28] Email from Amber R. Ross, Chief, FSA Information Management Section, to Cristina Stella (Nov. 16, 2017).

[29] Email from Christina Vander Linden to Cristina Stella (Nov. 30, 2017).

[30] Email from Cristina Stella to Christina Vander Linden (Dec. 4, 2017).

[31] Email from Christina Vander Linden to Cristina Stella (Dec. 5, 2017).

[32] Letter from Amber R. Ross, Chief, FSA Information Management Section (Dec. 18, 2017).

70.   FSA claimed that Exemption 3 protected records specifically exempted from disclosure under section 1619(b) of the FCEA, "includ[ing] information that FSA has obtained from agricultural producers or landowners that concerns their farming or agricultural operation, including production and marketing of agricultural commodities and livestock, farming practices, conservation practices or the land itself."[33] However, FSA relied on Exemption 3 to withhold information that is *not* provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA withheld information that fails to satisfy the specific criteria of the withholding statute.

71.   Further, according to FSA, "[t]he type of information withheld includes . . . loan amount . . . and number of acres."[34] However, such information does not fall within Exemption 3 because it is segregable and disclosable statistical or aggregate information and/or payment information. Thus, FSA improperly withheld nonexempt information under Exemption 3.

72.   FSA also claimed that Exemption 6 protected "personal information affecting an individual's privacy."[35] According to FSA, "[t]he records withheld under this exemption are . . . loan amount . . . and number of acres."[36] However, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.

***ALDF's November 2017 Request***

73.   On November 30, 2017, ALDF submitted a FOIA request to FSA for all records relating to FSA's funding of a new, high-volume chicken slaughterhouse in Arkansas, including any environmental review that FSA conducted.

---

[33] *Id.* at 1.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 2.

74.     On January 11, 2018, FSA provided its first interim response to ALDF's FOIA request.[37] Over the course of the next month, FSA provided two additional responses. FSA submitted its third and final response on February 2, 2018.[38] In total, FSA withheld hundreds of pages in part and in full under FOIA Exemptions 3 and 6.

75.     FSA failed to describe the scope of each exemption. FSA also failed to indicate which statute it was relying on to withhold information under Exemption 3, forcing Plaintiffs to search through the agency's 2018 FOIA raw data for clarification.[39] From the limited information available, Plaintiffs discovered that FSA withheld records under section 1619(b) of the FCEA.

76.     According to FSA, the pages withheld in full include "maps, legal descriptions of producer land . . . loan narratives, projected annual cash flow and income/expense trends."[40] However, such information does not fall within Exemption 3 because it is segregable and disclosable statistical or aggregate information and/or payment information. Moreover, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemptions 3 and 6.

**_ALDF's May 1, 2018 Request_**

77.     Similarly, on May 1, 2018, ALDF submitted a FOIA request to FSA for specific types of records regarding "animal agricultural facilities in Indiana for which FSA made a decision after August 3, 2016 on either (1) a Direct Loan application for more than $99,999; or (2) a Guaranteed Loan application for more than $299,999."[41] The specific types of records sought included "Credit Presentation" forms, "application form[s]," and "environmental review

---

[37] Email from Christina Vander Linden to Cristina Stella (Jan. 11, 2018).

[38] Email from Christina Vander Linden to Cristina Stella (Feb. 2, 2018).

[39] _See_ USDA, ANNUAL FOIA REPORT, RAW DATA (2018),

https://www.dm.usda.gov/foia/docs/FY18RawData.xlsx.

[40] _Id._; Email from Christina Vander Linden to Cristina Stella (Jan. 11, 2018).

[41] Letter from Danny Lutz, Staff Attorney, ALDF, to Kent Politsch (May 1, 2018).

documents."[42] ALDF also explicitly defined the terms "records" and "animal agricultural facilities."[43] ALDF requested a fee waiver because disclosure would significantly contribute to public understanding of FSA's NEPA process.[44]

78.   On July 5, 2018, FSA sent its first interim response to ALDF's FOIA request.[45] Over the next several weeks, FSA released seven additional interim responses. The agency sent its seventh and final interim response on August 13, 2018. In total, FSA released 3,905 pages, but withheld 3,386 pages in full and 5,117 pages in part under FOIA Exemptions 3, 4, and 6.

79.   FSA claimed that Exemption 3 protected records specifically exempted from disclosure under section 1619(b) of the FCEA.[46] However, FSA relied on Exemption 3 to withhold information that is *not* provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA withheld information that fails to satisfy the specific criteria of the withholding statute.

80.   Further, according to FSA, "[t]he type of information withheld includes information pertaining to acreage."[47] However, such information does not fall within Exemption 3 because it is segregable and disclosable statistical or aggregate information and/or payment information. Thus, FSA improperly withheld nonexempt information under Exemption 3.

81.   FSA also claimed that Exemption 6 protected "personal information affecting an individual's privacy."[48] According to FSA, "[t]he records withheld under this exemption includes . . . amount of the loan, . . . construction plans, site maps, producer Farm Data reports,

---

[42] *Id.* at 1.

[43] *Id.* at 2.

[44] *Id.* at 2–4.

[45] Letter from Amber R. Ross, Chief, FSA Information Management Section (Jul. 5, 2018).

[46] *Id.* at 1.

[47] *Id.*

[48] *Id.*

facility detail information and photos of producers land."[49] However, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.

***ALDF's May 25, 2018 Request***

82.   Furthermore, on May 25, 2018, ALDF submitted a FOIA request to FSA for all environmental screening worksheets that FSA had completed for pig operations in Minnesota classified as "medium CAFOs" since August 3, 2016.[50] ALDF also requested a fee waiver because disclosure of the requested records would significantly contribute to the public's understanding of FSA's NEPA process.[51]

83.   On July 10, 2018, FSA provided its final response to ALDF's FOIA request.[52] FSA released 282 pages in full, but withheld 121 pages in part under FOIA Exemptions 3 and 6. FSA did not specify the total number of responsive records or otherwise indicate whether it was withholding any pages in full.

84.   FSA claimed that Exemption 3 protected records specifically exempted from disclosure under section 1619(b) of the FCEA.[53] However, FSA relied on Exemption 3 to withhold information that is *not* provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA withheld information that fails to satisfy the specific criteria of the withholding statute.

85.   Further, according to FSA, "[t]he type of information withheld includes . . . loan amount and number of acres."[54] However, such information does not fall within Exemption 3

---

[49] *Id.* at 2.

[50] Email from Cristina Stella to FSA FOIA Team (May 25, 2018).

[51] *Id.*

[52] Letter from Amber R. Ross, Chief, FSA Information Management Section (Jul. 10, 2018).

[53] *Id.* at 1.

[54] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
23 of 45

1
2
because it is segregable and disclosable statistical or aggregate information and/or payment information. Thus, FSA improperly withheld nonexempt information under Exemption 3.

3
4
5
6
7
8
86.   FSA also claimed that Exemption 6 protected "personal information affecting an individual's privacy."[55] According to FSA, "[t]he records withheld under this exemption are . . . loan amount and number of acres."[56] However, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.

9
***ALDF's September 2018 Request***

10
11
12
13
87.   Finally, on September 20, 2018, ALDF submitted a FOIA request to FSA for all environmental screening worksheets that FSA had completed for "medium CAFOs" in South Dakota and North Carolina since August 3, 2016.[57] ALDF also requested a fee waiver because disclosure would significantly contribute to public understanding of FSA's NEPA process.[58]

14
15
16
88.   On October 18, 2018, FSA submitted its final response to ALDF's FOIA request. FSA located 437 pages of responsive records, but only released 271 pages in full.[59] FSA withheld 153 pages in part and 13 pages in full under FOIA Exemptions 3 and 6.

17
18
19
20
21
89.   FSA claimed that Exemption 3 protected records specifically exempted from disclosure under section 1619(b) of the FCEA.[60] However, FSA relied on Exemption 3 to withhold information that is *not* provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA withheld information that fails to satisfy the specific criteria of the withholding statute.

22
23
[55] *Id.*

24
[56] *Id.* at 2.

25
[57] Email from Cristina Stella to FSA FOIA Team (Sep. 20, 2018).

26
[58] *Id.*

27
[59] Letter from Amber R. Ross, Chief, FSA Information Management Section (Oct. 18, 2018).

28
[60] *Id.* at 1.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
24 of 45

90.    Further, according to FSA, "[t]he type of information withheld includes . . . producer farm report data" and "number of acres."[61] However, such information does not fall within Exemption 3 because it is segregable and disclosable statistical or aggregate information and/or payment information. Thus, FSA improperly withheld nonexempt information under Exemption 3.

91.    FSA also claimed that Exemption 6 protected "personal information affecting an individual's privacy."[62] According to FSA, "[t]he records withheld under this exemption are . . . maps, producer farm report data, number of acres and photos of producer farm."[63] However, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.

92.    FSA's history of disregarding ALDF's rights under FOIA hinders ALDF's advocacy and oversight efforts by preventing ALDF from gaining valuable insight into FSA's administration of federal loans to industrial animal agriculture operators, and sharing this insight with the public, its supporters, and affected communities.

***FWW's June 2016 Request***

93.    FSA has a history of disregarding FWW's rights under FOIA.

94.    For example, on June 15, 2016, FWW submitted a FOIA request to FSA regarding its loan or loan guarantee for the construction of a broiler chicken factory farm in Caroline County, Maryland.[64] FWW requested a fee waiver because disclosure of the responsive records would significantly contribute to the public's understanding of FSA's activities, and FWW had no commercial interest in the requested information.[65]

---

[61] *Id.*

[62] *Id.*

[63] *Id.* at 2.

[64] Letter from Tarah Heinzen, Staff Attorney, FWW, to FSA (June 15, 2016).

[65] *Id.* at 3–6.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
25 of 45

95.    On June 22, 2016, FSA issued a summary denial of FWW's request for a fee waiver based on a cursory review of the request, relying entirely on one of the multiple statutory factors informing whether an agency should grant a fee waiver.[66] FSA demanded assurance of payment for an estimated $500 fee, and advance payment of at least $250, for "search and review and redaction service" before it would process FWW's request.[67] FSA's demand did not provide any accounting for this $500 estimate.[68]

96.    FWW spent a significant amount of time and resources preparing an appeal to FSA's unwarranted fee waiver denial.[69] In its appeal, FWW again laid out the legal standard for a fee waiver in great detail, as it had done in its initial request, and noted FSA's failure to explain the basis for the estimated $500 fee.[70]

97.    On September 9, 2016, FSA communicated its revised accounting of the costs, which amounted to $0.[71] FSA did not adequately explain why it had incorrectly demanded an assurance to pay $500 and a prepayment of $250 to process FWW's request. Given the revised accounting, FSA determined that it was not necessary to consider FWW's appeal of its fee waiver denial and did not address the underlying legal question of whether FWW was entitled to such a waiver in the future.[72]

98.    On September 28, 2016, FSA responded to FWW's request.[73] Although FSA uncovered 745 pages of responsive records, FSA only released a 70-page Environmental

---

[66] Letter from Robert Wevodau, Farm Loan Chief, FSA Maryland State Office (June 22, 2016).

[67] *Id*.

[68] *See id.*

[69] Letter from Tarah Heinzen to FSA Appeals & Litigation (July 15, 2016).

[70] *Id*.

[71] Letter from John W. Welch, Director, FSA Appeals & Litigation (Sept. 9, 2016).

[72] *Id*.

[73] Letter from Robert Wevodau to Tarah Heinzen (Sept. 28, 2016).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
26 of 45

1  Assessment, which was already publicly available. FSA withheld 675 pages in full under FOIA

2  Exemption 6.

3      99.    FWW again committed substantial time to prepare an appeal pursuant to FSA's

4  instructions, this time regarding FSA's improper, blanket application of FOIA Exemption 6.

5  FWW submitted its appeal on October 17, 2016.[74]

6      100.   On February 14, 2017, FSA provided a revised final response to FWW's appeal

7  request and significantly changed its initial determination of how FOIA's narrow exemptions

8  apply to the responsive records.[75] During FSA's review of the records at issue in the appeal, FSA

9  determined that 654 pages of records were responsive,[76] but only released 360 pages in full.[77]

10 FSA withheld 206 pages in part and 89 pages in full under FOIA Exemptions 3, 5, and 6.[78]

11     101.   FSA claimed that Exemption 3 protected records specifically exempted from

12 disclosure under section 1619(b) of the FCEA. However, FSA relied on Exemption 3 to withhold

13 information that is *not* provided by agricultural producers or landowners, such as environmental

14 assessments prepared for and by FSA employees. Thus, FSA withheld information that fails to

15 satisfy the specific criteria of the withholding statute.

16     102.   Further, according to FSA, the records withheld under this section include "acreage

17 amounts, details of the agricultural operation, and the use . . . of the land."[79] However, such

18 information does not fall within Exemption 3 because it is segregable and disclosable statistical

19 or aggregate information and/or payment information. Thus, FSA improperly withheld

20 nonexempt information under Exemption 3.

---

22 [74] Letter from Tarah Heinzen to FSA Appeals & Litigation (Oct. 17, 2016).

23 [75] Letter from Chris P. Beyerhelm, Acting Administrator, FSA Appeals & Litigation, to Tarah

24 Heinzen (Feb. 14, 2017).

25 [76] *Id.* at 1.

26 [77] *Id.*

27 [78] *Id.*

28 [79] *Id.* at 2–3.

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
27 of 45

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

103.    In addition, despite acknowledging that NEPA "requires public participation in the environmental review process,"[80] FSA claimed that Exemption 5 protected "discussions within FSA that concern requests for records that pertain to the Environmental Assessment" because release of such information "would harm FSA's decision making process."[81]

104.    FSA also claimed Exemption 6 protected "personal information" about "individuals." However, such information does not fall within Exemption 6 because it is not personal information linked to a particular individual, and the public interest in disclosure is substantial. Thus, FSA improperly withheld nonexempt information under Exemption 6.[82]

105.    FSA's history of disregarding FWW's rights under FOIA hinders FWW's advocacy and oversight efforts by preventing FWW from gaining valuable insight into FSA's administration of federal loans to industrial animal agriculture operators in a timely manner, and sharing this insight with the public, its supporters, and affected communities.

**Plaintiffs' Collective Request for FSA's Directives on Responding to Plaintiffs' Requests**

106.    On April 17, 2019, Plaintiffs collectively submitted a FOIA request for records relating to FSA's FOIA request and appeal directives.[83] Specifically, Plaintiffs requested "all records mentioning or containing FSA's directives and/or policies for responding to and/or processing FOIA requests and appeals."[84] The purpose of this request was to obtain any written directives that govern FSA's responses to Plaintiffs' request to (1) establish the existence of an unlawful FOIA policy or practice, and (2) understand how FSA processes FOIA requests and

---

[80] *Id.* at 3–4.

[81] *Id.* at 4.

[82] *Id.* at 4–5.

[83] Letter from Jessica Culpepper to FSA FOIA Team (Apr. 17, 2019).

[84] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
28 of 45

how to better structure future requests. Plaintiffs were entitled to a fee waiver because they planned to use the records to inform the public about FSA's FOIA policies.[85]

107.    Because Plaintiffs reasonably described the requested records, and the request was not unduly burdensome, FSA was obligated to release all responsive records to Plaintiffs.

108.    Although FSA repeatedly attempted to narrow the scope of the request, Plaintiffs declined to modify the initial request.[86]

109.    On July 29, 2019, more than 100 days after Plaintiffs submitted their joint request, FSA sent its final written response to Plaintiffs.[87] According to FSA, there were only two responsive records: two emails explaining when FSA can release corn producers' data to a designated third party.[88]

110.    FSA did not communicate whether it was withholding any records from Plaintiffs.

111.    FSA also did not inform Plaintiffs of their right to appeal.[89]

112.    FSA's failure to conduct a reasonably calculated search and release the requested records hinders Plaintiffs' advocacy and oversight efforts by obfuscating FSA's pattern and practice of violating FOIA, and preventing Plaintiffs from effectively using FOIA to obtain valuable information regarding FSA's administration of farm loan programs.

//

//

//

---

[85] *See id.* at 3–4; Email from Patrick McLoughlin, FOIA Officer, to Jessica Culpepper (Apr. 25, 2019) (granting Plaintiffs' fee waiver request).

[86] *See, e.g.*, Email from Jason Connor to Barbara McLean (May 1, 2019, 13:02 EST).

[87] Email from Patrick McLoughlin to Jessica Culpepper (Jul. 29, 2019, 15:21 EST); Email from Barbara McLean to Jessica Culpepper (Jul. 31, 2019 12:04 EST) (confirming that "[t]he response provided . . . was [the] final response").

[88] *See* Email from Patrick McLoughlin to Jessica Culpepper (Jul. 29, 2019 15:21 EST).

[89] *Id.*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1

## FIRST CLAIM FOR RELIEF:

2

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

3

#### Failure to Make a Proper Initial Determination

4      113.    Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

5      114.    On April 17, 2019, Plaintiffs jointly submitted a proper request to FSA for records

6   regarding the agency's policies for processing FOIA requests. Specifically, Plaintiffs requested

7   "all records mentioning or containing FSA's directives and/or policies for responding to and/or

8   processing FOIA requests and appeals."

9      115.    FOIA requires FSA to make and communicate an initial determination within twenty

10  working days of receiving a proper FOIA request. 5 U.S.C. § 552(a)(3)(A).

11     116.    To make and communicate a proper determination under FOIA, FSA must (1) gather

12  and review responsive documents; (2) determine and communicate the scope of the documents

13  that the agency intends to produce and its reasons for withholding any documents; and (3) inform

14  requesters how to appeal adverse determinations. *CREW*, 711 F.3d at 188.

15     117.    FSA never informed Plaintiffs of their right to appeal FSA's adverse determination.

16     118.    Thus, FSA violated FOIA by failing to make a proper initial determination within

17  twenty working days of receiving Plaintiffs' joint request.

18     119.    Because FSA failed to make and communicate a proper determination, Plaintiffs have

19  exhausted their administrative remedies. *See CREW*, 711 F.3d at 188; 5 U.S.C. § (a)(6)(C)(i).

20     120.    FSA's failure to make a proper initial determination prevents Plaintiffs from

21  understanding FSA's FOIA processes and policies, which in turn hinders Plaintiffs' ability to

22  obtain the records they need to oversee FSA's farm loan programs and educate the public.

23     121.    This Court should declare that FSA violated FOIA by failing to make a proper initial

24  determination with respect to Plaintiffs' joint request.

25  //

26  //

27  //

28

**SECOND CLAIM FOR RELIEF:**

**VIOLATION OF THE FREEDOM OF INFORMATION ACT**

**Failure to Conduct an Adequate Search**

122.   Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

123.   Because Plaintiffs jointly submitted a proper FOIA request for records regarding the agency's policies for processing FOIA requests, FOIA requires FSA to conduct a search "reasonably calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571.

124.   Plaintiffs requested all types of information related to FSA's internal directives or processes for handling FOIA requests or appeals. However, FSA claimed that there were only two responsive records, neither of which directly related to FSA's FOIA policies.

125.   Moreover, Plaintiffs requested all types of documents and did not limit their request to correspondence. However, FSA only released emails.

126.   Thus, FSA violated FOIA by failing to conduct a search reasonably calculated to uncover all types of documents and information responsive to Plaintiffs' joint request.

127.   In addition, FSA's search failed to uncover responsive agency records that FSA had reason to know existed. For example, in response to FWW's June 2016 request, FSA withheld "discussions within FSA that concern requests for records that pertain to the Environmental Assessment." Because these discussions would have been highly responsive to Plaintiffs' request as well, a reasonably calculated search should have uncovered these agency records.

128.   Thus, FSA violated FOIA by unlawfully narrowing the scope of Plaintiffs' reasonably specific request and conducting an inadequate search.

129.   FSA must produce a reasonably detailed affidavit demonstrating that its search methods, including the search terms and types of documents searched, were reasonably likely to uncover all responsive records.

130.   Because FSA failed to make and communicate a proper determination, Plaintiffs have exhausted their administrative remedies. *See CREW*, 711 F.3d at 188; 5 U.S.C. § (a)(6)(C)(i).

131.    FSA's failure to conduct an adequate search prevents Plaintiffs from understanding FSA's FOIA processes and policies, which in turn hinders Plaintiffs' ability to obtain the records they need to oversee FSA's farm loan programs and educate the public.

132.    This Court should declare that FSA violated FOIA by failing to conduct an adequate search for all agency records responsive to Plaintiffs' joint request.

133.    To prevent continuing injury to Plaintiffs, this Court should order FSA to conduct an adequate search and release any improperly withheld records. 5 U.S.C. § 552(a)(4)(B).

## <u>THIRD CLAIM FOR RELIEF</u>:

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Failure to Promptly Release Agency Records

134.    Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

135.    Because Plaintiffs jointly submitted a proper FOIA request for records regarding the agency's policies for processing FOIA requests, FOIA requires FSA to make responsive records "promptly available." 5 U.S.C. § 552(a)(3)(A), (6)(C)(i).

136.    Despite only releasing two short emails, FSA unreasonably delayed production of these documents for more than three months.

137.    Thus, FSA violated FOIA by unduly delaying production of the requested records.

138.    Because FSA failed to make and communicate a proper determination, Plaintiffs have exhausted their administrative remedies. *See CREW*, 711 F.3d at 188; 5 U.S.C. § (a)(6)(C)(i).

139.    FSA's failure to promptly release the requested records prevents Plaintiffs from understanding FSA's FOIA processes and policies, which in turn hinders Plaintiffs' ability to obtain the records they need to oversee FSA's farm loan programs and educate the public.

140.    This Court should declare that FSA violated FOIA by unduly delaying production of the records responsive to Plaintiffs' joint request.

//

//

//

1

## FOURTH CLAIM FOR RELIEF:

2

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

3

#### Pattern & Practice of Unduly Delaying Actual Productions

4    141.    Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

5    142.    Because Plaintiffs' FOIA requests "reasonably describe[d]" the records sought and

6    complied with FSA's published rules, FSA was obligated to make the requested records

7    "promptly available," "which "mean[s] within days or a few weeks of a 'determination,' not

8    months or years." *CREW*, 711 F.3d at 188; 5 U.S.C. § 552(a)(3)(A), (6)(C)(i).

9    143.    FSA regularly failed to release responsive records for several months, and in some

10   cases years, by issuing unsubstantiated fee waiver denials, seeking unnecessary clarification or

11   information from Plaintiffs, and otherwise unduly delaying actual production of records.

12            *Public Justice's March 2016 Request*

13   144.    For example, Public Justice submitted a proper FOIA request and fee waiver request

14   in March 2016, but FSA did not release responsive records until August 24, 2017, more than a

15   year after Public Justice submitted the request.

16            *FWW's June 2016 Request*

17   145.    FWW submitted a proper FOIA request and fee waiver request in June 2016, but FSA

18   delayed actual production of documents for several months to resolve unsubstantiated fee-related

19   issues. FSA dodged FWW's fee waiver request on September 9, 2016, after revising its

20   threatened cost estimate from $500 to $0, and released responsive records several days later, on

21   September 28, 2016.

22            *Public Justice's March 2017 Request*

23   146.    Public Justice submitted a proper request and fee waiver in March 2017, but FSA

24   again delayed actual production for several months to resolve unsubstantiated fee-related issues.

25   Further, although FSA granted Public Justice's fee waiver request in July 2017, the agency

26   continued to delay actual production for several additional months. FSA did not release the

27   responsive records until February 2018, nearly a year after Public Justice submitted the request.

28

1

*ALDF's October 2017 Request*

2      147.    ALDF submitted a proper request in October 2017, but FSA again delayed actual

3   production for several weeks to seek unnecessary clarification from ALDF. Although ALDF

4   limited the scope of the request to specific documents ("FSA Form 860") and dates ("since

5   August 3, 2016"), and ALDF agreed to further limit the request to certain states for faster

6   processing, FSA asked ALDF to provide additional clarification multiple times, and claimed that

7   it could not proceed until ALDF narrowed the scope of the request. However, FSA eventually

8   deemed the request "perfected" without making any changes to the language or scope of the

9   initial request.

10     148.    Thus, FSA has a pattern or practice of violating FOIA by unduly delaying actual

11  production of requested records for several months and sometimes years.

12     149.    FSA's pattern and practice has prevented Plaintiffs from obtaining the information

13  they need to watchdog FSA's federal farm loan programs, analyze FSA's compliance with

14  NEPA and other applicable statutes, and educate the public about FSA's activities and use of

15  federal funds. Further, FSA's pattern and practice will significantly impair Plaintiffs' ability to

16  access agency records in the future because Plaintiffs will continue to submit FOIA requests to

17  FSA to obtain the information they need to fulfill their organizational missions.

18     150.    Unless this Court grants the requested injunctive and declaratory relief, FSA will

19  continue its pattern and practice of unduly delaying actual production of requested records,

20  thereby depriving Plaintiffs of their statutory right to agency records, stymieing Plaintiffs'

21  important monitoring and advocacy efforts, and enabling FSA to escape public scrutiny.

22                              **FIFTH CLAIM FOR RELIEF**:

23                 **VIOLATION OF THE FREEDOM OF INFORMATION ACT**

24   **Pattern & Practice of Improperly Withholding Records under FOIA Exemption 3**

25     151.    Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

26     152.    Whenever FSA identifies a responsive record, it must disclose the entire record unless

27  one of FOIA's nine enumerated exemptions applies to information within the record. 5 U.S.C. §

28

552(a)(3)(A), (d). FOIA requires FSA to construe the enumerated exemptions narrowly, in keeping with the statute's principal purpose of disclosure.

153.    FOIA further requires FSA to take reasonable steps to segregate and release any nonexempt information contained in a responsive record. 5 U.S.C. § 552(a)(8)(A)(ii).

154.    FSA withheld thousands of pages of responsive records from Plaintiffs by claiming that nonexempt information contained in responsive records fell under FOIA Exemption 3.

155.    FOIA Exemption 3 only allows FSA to withhold information "specifically exempted from disclosure by [certain] statutes." *Id.* § 552(b)(3). If information in a responsive record falls outside the scope of the withholding statute, Exemption 3 does not apply to the information, and FSA must segregate and release the information to the requestor.

156.    Although FOIA requires agencies to construe exemptions narrowly and in favor of disclosure, FSA frequently withheld responsive records from Plaintiffs under Exemption 3 by construing the scope of the withholding statute too broadly. Specifically, FSA frequently claimed 7 U.S.C. § 8791(b)(2) protects all "information FSA . . . obtained from agricultural producers or landowners that concerns their farming or agricultural operations." However, the statute does not protect *all* information "obtained from" agricultural producers or landowners, just the information "*provided by*" these entities "*in order to participate in [FSA's] programs.*" (emphasis added). Moreover, the statute does not protect all information FSA maintains about agricultural land or operations for which agricultural producers or landowners provided information for funding purposes, just "geospatial information." *Id*. Thus, FSA interpreted the withholding statute too liberally because the agency ignored the statute's limiting language.

157.    In addition, FSA frequently withheld nonexempt information by ignoring the withholding statute's exemption for numerical or quantitative information with no discernable connection to a particular agricultural producer, landowner, or site. FSA can release such information because the withholding statute expressly allows FSA to disclose information that "has been transformed into a statistical . . . form without naming (i) any individual owner, operator, or producer; or (ii) specific data gathering site." *Id.* § (b)(4)(B).

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
35 of 45

158.   FSA also frequently withheld nonexempt information by ignoring the withholding statute's exemption for information calculated by combining multiple data sources, including information about multiple loans or farms, with no discernable connection to a particular agricultural producer, landowner, or site. FSA can release such information because the withholding statute expressly allows FSA to disclose information that "has been transformed into a . . . aggregate form without naming (i) any individual owner, operator, or producer; or (ii) specific data gathering site." *Id.* § (b)(4)(B).

159.   FSA also frequently withheld nonexempt information by ignoring the withholding statute's exemption for information about federal farm loan payments and recipients. FSA can release such information because the withholding statute expressly allows FSA to disclose "payment information (including payment information and the names and addresses of recipients of payments) under any Department program that is otherwise authorized by law," including FSA's federal farm loan and loan guarantee programs. *Id.* § (b)(4)(A). Unlike the exemptions for aggregate or statistical information, which expressly exclude information that "nam[es] any individual owner, operator, or producer," the exemption for payment information expressly includes the "names and addresses" of federal farm loan recipients, including individual agricultural producers or landowners who receive farm loans and lenders who receive farm loan guarantees from FSA.

*Public Justice's March 2016 Request*

160.   For example, in response to Public Justice's March 2016 request, FSA claimed "[t]he type of information withheld [under 7 U.S.C. § 8791(b)] includes FSA loan participant's crop and acreage information." However, FSA withheld records that were not provided by agricultural producers or landowners, such as compliance determinations by county committees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site, as well as information from and/or about multiple data sources with no discernable connection to a particular individual or site. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
36 of 45

exemptions for statistical information and aggregate information. Finally, FSA withheld essential data about federal farm loan payments and recipients. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

*FWW's June 2016 Request*

161.    Likewise, in response to FWW's June 2016 request, FSA relied on the same statute to withhold a variety of information, including "acreage amounts, details of the agricultural operation, and the use . . . of the land." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "acreage amounts"), as well as information from and/or about multiple data sources with no discernable connection to a particular individual or site. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemptions for statistical information and aggregate information. Finally, FSA withheld essential data about federal farm loan payments and recipients. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

*ALDF's October 2017 Request*

162.    In response to ALDF's October 2017 request, FSA relied on the same withholding statute to withhold a variety of information, including "loan amount, lender and number of acres." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "number of acres"), as well as information from and/or about multiple data sources with no discernable connection to a particular individual or site. Thus, FSA improperly withheld records that were segregable and disclosable under the

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
37 of 45

withholding statute's exemptions for statistical information and aggregate information. In addition, FSA withheld essential data about federal farm loan payments and recipients (e.g., "loan amount" and "lender"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

### *ALDF's November 2017 Request*

163.    In response to ALDF's November 2017 request, FSA relied on the same withholding statute to withhold a variety of information, including "legal descriptions of producer land . . . loan narratives, projected annual cash flow and income/expense trends." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "projected annual cash flow"), as well as information from and/or about multiple data sources with no discernable connection to a particular individual or site (e.g., "income/expense trends"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemptions for statistical information and aggregate information. In addition, FSA withheld essential data about federal farm loan payments and recipients (e.g., "loan narratives"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

### *ALDF's May 1, 2018 Request*

164.    In response to ALDF's May 1, 2018 request, FSA relied on the same withholding statute to withhold a variety of information, including "information pertaining to acreage," "loan amount," and "number of acres." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "number of acres"), as well as information from and/or about multiple data sources with no discernable connection to a

particular individual or site. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemptions for statistical information and aggregate information. In addition, FSA withheld essential data about federal farm loan payments and recipients (e.g., "loan amount"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

### *ALDF's May 25, 2018 Request*

165. In response to ALDF's May 25, 2018 request, FSA relied on the same withholding statute to withhold a variety of information, including "loan amount," and "number of acres." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "number of acres"), as well as information from and/or about multiple data sources with no discernable connection to a particular individual or site. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemptions for statistical information and aggregate information. In addition, FSA withheld essential data about federal farm loan payments and recipients (e.g., "loan amount"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

### *ALDF's September 2018 Request*

166. In response to ALDF's September 2018 request, FSA relied on the same withholding statute to withhold a variety of information, including "maps, producer farm report data, [and] number of acres." However, FSA withheld records that were not provided by agricultural producers or landowners, such as environmental assessments prepared for and by FSA employees. Thus, FSA improperly withheld records that did not meet the specific criteria of the withholding statute. Moreover, FSA withheld numerical and/or quantitative information with no discernable connection to a particular individual or site (e.g., "number of acres"), as well as information from and/or about multiple data sources with no discernable connection to a

particular individual or site (e.g., "maps"). Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemptions for statistical information and aggregate information. In addition, FSA withheld essential data about federal farm loan payments and recipients. Thus, FSA improperly withheld records that were segregable and disclosable under the withholding statute's exemption for payment information.

167.    Thus, FSA has a pattern and practice of improperly withholding responsive records from Plaintiffs under FOIA Exemption 3 by (1) withholding information that does not meet the withholding statute's specific criteria; (2) withholding information that falls within one of the withholding statute's exemptions; and (3) failing to segregate and release nonexempt information contained in responsive records.

168.    FSA's pattern and practice has prevented Plaintiffs from obtaining the information they need to watchdog FSA's federal farm loan programs, analyze FSA's compliance with NEPA and other applicable statutes, and educate the public about FSA's activities and use of federal funds. Further, FSA's pattern and practice will significantly impair Plaintiffs' ability to access agency records in the future because Plaintiffs will continue to submit FOIA requests to FSA to obtain the information they need to fulfill their organizational missions.

169.    Unless this Court grants the requested injunctive and declaratory relief, FSA will continue its pattern and practice of improperly withholding responsive records under FOIA Exemption 3, thereby depriving Plaintiffs of their statutory right to agency records, stymieing Plaintiffs' important monitoring and advocacy efforts, and enabling FSA to escape public scrutiny.

## SIXTH CLAIM FOR RELIEF:

### VIOLATION OF THE FREEDOM OF INFORMATION ACT

### Pattern & Practice of Improperly Withholding Records under FOIA Exemption 6

170.    Plaintiffs reallege and incorporate the allegations made in all preceding paragraphs.

171.    FSA withheld thousands of pages of responsive records from Plaintiffs by claiming that nonexempt information contained in responsive records fell under FOIA Exemption 6.

172.    FOIA Exemption 6 only allows FSA to withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 only applies when a particular individual's privacy interest in nondisclosure clearly outweighs the public's interest in disclosure of the requested information. If there is no privacy interest at stake, or if an individual's privacy interest in nondisclosure is minimal, Exemption 6 does not apply.

173.    Although FOIA requires agencies to construe exemptions narrowly and in favor of disclosure, FSA frequently withheld responsive records from Plaintiffs under Exemption 6 by construing the scope of this exemption too broadly. Specifically, FSA asserted that Exemption 6 protected all "personal information" about "individuals." However, Exemption 6 does not apply to all information about an individual, only sensitive or private information with an identifiable connection to a particular individual. Thus, FSA improperly withheld nonexempt information under Exemption 6 because FSA construed Exemption 6 too liberally.

174.    Moreover, individual agricultural producers and landowners have little to no privacy interest in withholding the requested records because the requested records only pertain to voluntary business activities and/or government activities with no discernable connection to any particular producer, landowner, or site. Thus, FSA improperly withheld nonexempt information under Exemption 6 because FSA grossly exaggerated the privacy interests at stake.

175.    Moreover, the public interest in disclosure of records relating to FSA's administration of federal farm loans and loan guarantees is significant because FSA uses taxpayer dollars to fund its federal farm loan programs, and there is very little information available to the public about FSA's use of such funds. In addition, the public has a significant interest in the environmental, economic, and public health impacts of FSA's federal farm loan programs. Without disclosure of the requested records, the public cannot effectively monitor FSA's administration of federal farm loan programs and its impacts. Thus, FSA improperly withheld nonexempt information under Exemption 6 because FSA failed to fully consider the public's significant public interest in disclosure.

//

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

1

### *FWW's June 2016 Request*

2    176.    For example, in response to FWW's June 2016 request, FSA relied on Exemption 6 to

3    withhold a variety of information, including "acreage amounts, details of the agricultural

4    operation, and the use . . . of the land." However, Exemption 6 does not apply because such

5    information is neither personal in nature nor traceable to a particular person or site. Moreover,

6    the public interest in disclosure is significant.

7    ### *Public Justice's March 2017 Request*

8    177.    Likewise, in response to Public Justice's March 2017 request, FSA relied on

9    Exemption 6 to withhold a variety of information, including "maps," "legal descriptions of

10   producer land," "income/expense trends," "photographs of producer land," "loan narratives" and

11   "appraisals," and "parcel data." However, Exemption 6 does not apply because such information

12   is neither personal in nature nor traceable to a particular person or site. Moreover, the public

13   interest in disclosure is significant.

14   ### *ALDF's October 2017 Request*

15   178.    In response to ALDF's October 2017 request, FSA relied on Exemption 6 to withhold

16   a variety of information, including "loan amount, lender and number of acres." However,

17   Exemption 6 does not apply because such information is neither personal in nature nor traceable

18   to a particular person or site. Moreover, the public interest in disclosure is significant.

19   ### *ALDF's November 2017 Request*

20   179.    In response to ALDF's November 2017 request, FSA relied on Exemption 6 to

21   withhold a variety of information, including "maps, legal descriptions of producer land . . . loan

22   narratives, projected annual cash flow and income/expense trends." However, Exemption 6 does

23   not apply because such information is neither personal in nature nor traceable to a particular

24   person or site. Moreover, the public interest in disclosure is significant.

25   ### *ALDF's May 1, 2018 Request*

26   180.    In response to ALDF's May 1, 2018 request, FSA relied on Exemption 6 to withhold

27   a variety of information, including "amount of the loan, . . . construction plans, site maps,

28   producer Farm Data reports, facility detail information and photos of producers land." However,

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
42 of 45

Exemption 6 does not apply because such information is neither personal in nature nor traceable to a particular person or site. Moreover, the public interest in disclosure is significant.

### *ALDF's May 25, 2018 Request*

181.    In response to ALDF's May 25, 2018 request, FSA relied on Exemption 6 to withhold a variety of information, including "loan amount and number of acres." However, Exemption 6 does not apply because such information is neither personal in nature nor traceable to a particular person or site. Moreover, the public interest in disclosure is significant.

### *ALDF's September 2018 Request*

182.    In response to ALDF's September 2018 request, FSA relied on Exemption 6 to withhold a variety of information, including "maps, producer farm report data, number of acres and photos." However, Exemption 6 does not apply because such information is neither personal in nature nor traceable to a particular person or site. Moreover, the public interest in disclosure is significant.

183.    Thus, FSA has a pattern and practice of improperly withholding responsive records from Plaintiffs under FOIA Exemption 6 by (1) exaggerating federal farm loan recipients' privacy interest in information with no traceable connection to a particular individual or site; (2) ignoring the public's significant interest in disclosure; and (3) failing to segregate and release nonexempt information contained in responsive records.

184.    FSA's pattern and practice has prevented Plaintiffs from obtaining the information they need to watchdog FSA's federal farm loan programs, analyze FSA's compliance with NEPA and other applicable statutes, and educate the public about FSA's activities and use of federal funds. Further, FSA's pattern and practice will significantly impair Plaintiffs' ability to access agency records in the future because Plaintiffs will continue to submit FOIA requests to FSA to obtain the information they need to fulfill their organizational missions.

185.    Unless this Court grants the requested injunctive and declaratory relief, FSA will continue its pattern and practice of improperly withholding responsive records under FOIA Exemption 6, thereby depriving Plaintiffs of their statutory right to agency records, stymieing

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF

Plaintiffs' important monitoring and advocacy efforts, and enabling FSA to escape public scrutiny.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests this Court:

1. Declare that FSA failed to conduct an adequate search for agency records responsive to Plaintiffs' April 2019 FOIA request.

2. Declare that FSA failed to make and communicate an initial determination regarding Plaintiffs' April 2019 FOIA request.

3. Declare that FSA unduly delayed actual production of records responsive to Plaintiffs' April 2019 FOIA request.

4. Enjoin FSA from withholding records responsive to Plaintiffs' April 2019 FOIA Request. *See* 5 U.S.C. § 552(a)(4)(B).

5. Order FSA to conduct an adequate search for records responsive to Plaintiffs' April 2019 FOIA Request.

6. Order FSA to release any improperly withheld records responsive to Plaintiffs' April 2019 FOIA request. *Id*.

7. Declare that FSA has a pattern and practice of unduly delaying actual production of records responsive to Plaintiffs' FOIA requests.

8. Declare that FSA has a pattern and practice of improperly withholding nonexempt information under FOIA Exemption 3.

9. Declare that FSA has a pattern and practice of improperly withholding nonexempt information under FOIA Exemption 6.

10. Enjoin FSA from unduly delaying actual production of records responsive to Plaintiffs' future FOIA requests.

11. Enjoin FSA from improperly withholding nonexempt information in records responsive to Plaintiffs' future requests under Exemption 3. *Id*.

12. Enjoin FSA from improperly withholding nonexempt information in records responsive to Plaintiffs' future requests under Exemption 6. *Id*.

13.   Grant reasonable litigation costs, including attorney fees, to Plaintiffs. *Id.* § (E)(i).

14.   Provide any further relief that the Court deems proper.

Date:   February 12, 2020         Signature: _____

                                              Kellan Smith

Kellan Smith (SBN 318911)
PUBLIC JUSTICE, P.C.
475 14th Street, Suite 610
Oakland, CA 94612
Phone: (510) 622-8214
Email: ksmith@publicjustice.net

*Attorney for Plaintiffs*

Cristina R. Stella (SBN 305475)
ANIMAL LEGAL DEFENSE FUND
525 E Cotati Avenue
Cotati, CA 94931
Phone: (707) 795-2533
Email: cstella@aldf.org

*Attorney for Plaintiff Animal Legal Defense Fund*

Victoria Yundt (SBN 326186)
CENTER FOR FOOD SAFETY
303 Sacramento Street, Floor 2
San Francisco, CA 94111
Phone: (415) 826-2770
Email:tyundt@centerforfoodsafety.org

*Attorney for Plaintiff Center for Food Safety*

Tyler Lobdell (SBN 321128)
FOOD & WATER WATCH
1616 P Street NW, Suite 300
Washington, DC 20036
Phone: (208) 209-3569
Email: tlobdell@fwwatch.org

*Attorney for Plaintiff Food & Water Watch*

COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF
45 of 45