UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PUBLIC JUSTICE FOUNDATION, et al.,

    Plaintiffs,

    v.

FARM SERVICE AGENCY,

    Defendant.

No. C 20–01103 WHA

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION REGARDING FOIA WITHHOLDINGS**

**INTRODUCTION**

In this FOIA action, food safety, environmental, and animal rights groups seek disclosure of information held by the Farm Service Agency regarding federal loans to farmers.

**STATEMENT**

Plaintiffs Public Justice Foundation, Animal Legal Defense Fund, Center for Biological Diversity, Center for Food Safety, and Food & Water Watch are advocacy organizations promoting a sustainable and ethical food system. Plaintiffs use FOIA requests to monitor compliance with applicable laws, to draw public attention to issues within our food system, and to advocate for policy changes (Compl. ¶¶ 1–2).

Defendant Farm Service Agency, a division of the Department of Agriculture, provides loans and loan guarantees to farmers and agricultural operations. Plaintiffs contend that FSA's

loan administration must comply with the National Environmental Policy Act by reviewing potential environmental impacts of projects that FSA supports with its farm loan program (Compl. ¶¶ 1–2). (This action, however, is not a NEPA action.)

To monitor FSA's administration of the farm loan program, plaintiffs have submitted FOIA requests for information concerning specific agricultural operations in certain geographical regions. Plaintiffs also collectively submitted a FOIA request for records relating to "FSA's directives and/or policies for responding to and/or processing FOIA requests and appeals" (Compl. ¶¶ 1–2; Decl. Buchan ¶ 7). Plaintiffs bring "pattern and practice" claims against FSA for systemic withholdings and undue delay in responding to plaintiffs' FOIA requests. However, a prior order specified that the current motion challenging withholdings should not address the broader "pattern and practice" claims.

The current motion focuses on the legality under FOIA of FSA's withholding of applications to its farm loan program and information pertinent to those applications.

**ANALYSIS**

FOIA lets us see what our government has been up to by "provid[ing] public access to official information shielded unnecessarily from public view and establish[ing] a judicially enforceable public right to secure such information from possibly unwilling official hands." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (citations and quotations omitted). Thus, FOIA "mandates a policy of broad disclosure of government documents." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (quotations and citations omitted).

An agency may withhold a document "only if the material at issue falls within one of the nine statutory exemptions." *Ibid*. These exemptions are "explicitly exclusive and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Ibid*. (internal quotation marks and citations omitted). "FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir.

2015). It must further provide all "reasonably segregable" portions of that record to the requester. 5 U.S.C. § 552(b).

In our case, plaintiffs contend that FSA improperly withheld a variety of documents concerning loan program applications using Exemptions 3, 4, and/or 6. Exemption 3 is the most directly applicable.

**1.    EXEMPTION 3**

FSA applied Exemption 3, the statutory withholding exemption, to nearly all the withheld documents here at issue. Exemption 3 allows the withholding if the documents is:

> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute —
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

In turn, the cited withholding statute is 7 U.S.C. § 8791 enacted through Section 1619 of the Food, Conservation, and Energy Act of 2008. The parties do not dispute that Section 8791 is considered a withholding statute under Exemption 3 and other courts have characterized Section 8791 as such. *See, e.g., Zazoni v. U.S. Dep't of Agric.*, 605 F.Supp.2d 230, 236-37 (D.D.C. 2009); *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1147 (8th Cir. 2011).

Subsection 2 of Section 8791 prohibits disclosure of certain information gained through farmers' participation in its programs as follows:

> (2)    Except as provided in paragraphs (3) and (4), the Secretary, any officer or employee of the Department of Agriculture, or any contractor or cooperator of the Department, shall not disclose —
>
> (A)    information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department; or
>
> (B)    geospatial information otherwise maintained by the

3

>Secretary about agricultural land or operations for which
>information described in subparagraph (A) is provided.

Subsection 4, however, qualifies the withholding requirement with three exceptions:

>(4) Nothing in this subsection affects —
>
>(A) the disclosure of payment information (including payment information and the names and addresses of recipients of payments) under any Department program that is otherwise authorized by law;
>
>(B) the disclosure of information described in paragraph (2) if the information has been transformed into a statistical or aggregate form without naming any —
>
>(i) individual owner, operator, or producer; or
>
>(ii) specific data gathering site; or
>
>(C) the disclosure of information described in paragraph (2) pursuant to the consent of the agricultural producer or owner of agricultural land.

The term "including" in Subsection 4(A) indicates that "payment information" covers more than names and addresses. Furthermore, Subsection 4(A) references "recipients," suggesting that "payment information" should be construed to cover information indicating to whom funding was disbursed and the amounts of those disbursements.

Subsection 5 adds a further caveat to the exception for consented-to disclosure by requiring that the Department of Agriculture not make eligibility for benefits or programs contingent upon consent.

In this FOIA action, FSA seeks to withhold under Section 8791 various documents provided to FSA by farmers seeking to participate in its farm loan program as well as documents created by the FSA that reference information provided by farmers (Decl. Smith, Exh. D). Plaintiffs challenge the legality of the withholding of certain categories of information provided in these withheld documents (Decl. Smith, Exh. A):

- Name and addresses;
- financial information, such as farmers' current assets, liabilities, and credit score;
- information pertinent to their application or loan

4

> disbursement, such as loan amount, debt repayment schedules, and loan conditions; and
>
> - information about farm operations, such as project proposals and the type of operation for which funding is sought

Plaintiffs do *not* challenge the withholding of date of birth, social security numbers, signatures, credit identity numbers, character descriptions of borrowers (such as years of farming experience, gender, and race), total liability amount, credit history, citizenship status, etc.

FSA contends that, without farmers' consent, this information must be withheld pursuant to Section 8791 because farmers provided the information to participate in FSA's farm loan program and none of the information falls into any of the exceptions. Plaintiffs suggest that farmers consented to disclosure as evidenced by the notice contained in applications regarding FSA's obligations under FOIA because they state "the information collected on this form may be disclosed to . . . nongovernmental entities that have been authorized access to the information by statute or regulation . . . ." (Exhs. B at 1, C at 4).

Plaintiffs' contention cannot be squared with Section 8791(4)(C)'s prohibition on conditioning program benefits on agreement to disclosure. The fact that FSA alerted farmers to the Privacy Act and FOIA does not amount to blanket consent under Section 8791.

Plaintiffs argue that, because loans are payments, any information "concerning" them must also be "payment information." Plaintiff's argument ignores that Section 8791(4)(C)'s says nothing about information "concerning" payments, which would implicate information removed from the payment information itself. Nor do plaintiffs offer evidence that the drafters of Section 8791 contemplated information merely "concerning" loans in crafting the payment information exception.

The Court's own review of the legislative history provides no insight into the precise meaning of "payment information." No decisions, moreover, specifically analyze the applicability of the term "payment information" on loans or loan guarantees or whether information steps removed from the payments themselves are properly disclosed as "payment information." So this order will apply common sense. Names, addresses, amounts, and dates

are crucial context to follow taxpayers' money, which seems to be the point of the "payment information" exception. Therefore, the agency must turn over all documents necessary to disclose the names and addresses of all recipients of the loan funds in question as well as the dollar amount and dates paid by the agency to the recipient. In addition, any transmittal document accompanying the transfer or check would also be "payment information." In addition, "payment information includes the name and number of the loan and the total dollar amount of the loan. An acknowledgment of receipt by the recipient would also be "payment information."

A closer call arises when the payment is earmarked by the agency for a specific purpose. Must that limitation be disclosed? This order holds that a specific earmark by the agency is disclosable information about the payment. However, the application for the loan by the farmer is a mere request, not information that circumscribes the payment. No application document submitted by farmers constitutes payment information. If, however, the agency itself limits or circumscribes use of the payment to a specific purpose as specified in the application, then that specific passage in the application is disclosable under Section 8791.

Finally, where applicants never became recipients of taxpayer money (for instance, when their loan applications were denied), then information related to those applications could in no way constitute "payment information."

### 2. EXEMPTION 4

Exemption 4 covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Several other documents were withheld citing Exemption 4, including an excel spreadsheet of loans in California, a loan assistance form, promissory notes, and agreements as to the use of proceeds provided by FSA.

The Supreme Court held that Exemption 4 applies to commercial or financial information that meets two criteria: (1) "both customarily and actually treated as private by its owner," and (2) "provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019). Despite this statement, *Argus Leader* did not settle whether information conveyed to the government may be withheld *without* an assurance

6

of privacy — there, the assurance was undisputed and the Supreme Court expressly declined to further analyze the issue. However, *Argus Leader* did acknowledge our court of appeals' stance that Exemption 4 could protect information "reveal[ed] to the government under the express or implied promise by the government that the information will be kept confidential." *Gen. Servs. Admin. v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969). This order therefore acknowledges *Argus Leader*, but must apply the *Benson* standard.

In doing so, this order finds that FSA failed to provide an assurance of confidentiality — either express or implied — to loan applicants merely because the application for direct loan assistance and the preferred lender application for guarantee included a disclosure that referenced the Privacy Act, including FOIA. Both applications, already previously quoted, state in full (Exhs. B at 1, C at 4):

> The following statement is made in accordance with the Privacy Act of 1974 (5 USC 552a – as amended). The authority for requesting the information identified on this form is 7 CFR Part 761, 7 CFR Part 764, the Consolidated Farm and Rural Development Act (7 U.S.C. 1921 et seq.), and the Agricultural Act of 2014 (Pub. L. 113-79). The information will be used to determine eligibility to participate in and receive benefits under the Direct Loan Program. The information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses identified in the System of Records Notice for USDA/FSA-14, Applicant/Borrower. Providing the requested information is voluntary. However, failure to furnish the requested information will result in a determination of ineligibility to participate in and receive benefits under the Direct Loan Program.

The application's statement that it "may" disclose the information to "government agencies" and "nongovernmental entities that have been authorized access" is not an assurance of confidentiality. It seems quite the opposite: a warning that under some circumstances, information will be disclosed. Similarly, the agency's System of Record Notice, a document FSA transmits to farmers explaining their recordkeeping and disclosure procedures, states that information may be disclosed to a wide variety of non-governmental entities, including (Exh. A):

- "business firms in a trade area that buy chattel or crops or sell them for commission,"
- "financial consultants, advisors, or underwriters, when FSA determines such referral is appropriate for developing packaging and marketing strategies involving the sale of FSA loan assets,"
- "state-licensed appraisers and employees of Federal agencies other than USDA qualified to perform real estate appraisals,"
- "consumer reporting agencies" as defined in the Fair Credit Reporting Act (15 U.S.C. 1681a(f) or the Federal Claims Collection Act (31 U.S.C. 3701(a)(3)).

In arguing that there was an implied assurance of confidentiality under Exemption 4, FSA recommends the approach to Exemption 7(D) adopted by *U.S. Dep't of Just. v. Landano*, 508 U.S. 165 (1993). In arguing for the application of *Landano* to our case, however, FSA divorces the analysis from the context of Exemption 7, the confidentiality interests at stake there, and even the holding itself.

Exemption 7(D) allows law enforcement agencies to withhold:

> . . . records or information compiled for law enforcement purposes, but only to the extent that the production of such . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source . . .

*Landano* analyzed Exemption 7 in connection with a request for information on paid informants related to the FBI's criminal investigation of an alleged gang-related shooting of a police officer. After an appeal from the District Court of New Jersey, the Third Circuit affirmed the district court's grant of summary judgment in favor of the requester. The Supreme Court granted certiorari to consider "the evidentiary showing that the Government must make to establish that a source is 'confidential' within the meaning of Exemption 7(D)" and "whether the Government is entitled to a presumption that all sources supplying

information to the Federal Bureau of Investigation . . . in the course of a criminal investigation are confidential sources." 508 U.S. at 167. In its analysis, the Supreme Court noted:

> The nature of the informant's ongoing relationship with the Bureau, and the fact that the Bureau typically communicates with informants only at locations and under conditions which assure the contact will not be noticed justify the inference [of confidentiality]. There may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred.

*Id*. at 179. The law enforcement context covered by Exemption 7 in *Landano* implicated radically different confidentiality interests (informant safety and law enforcement efficacy) than those in play here. Furthermore, *Landano* actually overturned the court of appeals holding that the government was entitled to a presumption of confidentiality under Exemption 7 merely because the information revealed sources of information used in an FBI investigation. The Supreme Court remanded the case back to district court for a more nuanced consideration of "narrowly defined circumstances" than those originally considered.

This order declines FSA's suggestion to import *Landano*'s consideration of "general circumstances" that imply confidentiality in the law enforcement context to enlarge Exemption 4 in the commercial context. Exemption 4 does not permit FSA to withhold loan application information or payment information related to loans because, here, no confidentiality assurance was provided.

So, the second factor in the *Argus Leader* analysis — that the information is both customarily and actually treated as private by its owner — need not be decided.

**3. EXEMPTION 6**

Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Our court of appeals had laid out the standard for assessing a withholding under Exemption 6:

> We ask two questions in deciding whether an agency has properly withheld records or information under Exemption 6. First, we ask whether the document qualifies under the heading of personnel and medical files and similar files.

\* \* \*

9

> The second requirement under Exemption 6 is that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy. To answer this question, we must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure.
>
> \* \* \*
>
> To withhold information under Exemption 6, an agency must show that some nontrivial privacy interest is at stake. If only a trivial privacy interest is implicated, then Exemption 6 cannot apply. But if there is a nontrivial privacy interest, then the agency must balance the individual's interest in personal privacy against the public's interest in disclosure.

*Prudential Locations LLC v. U.S. Dep't of Housing and Urban Dev.*, 739 F.3d 424, 429–30 (9th Cir. 2013).

FSA withheld certain documents on the basis of multiple grounds, including Exemption 6, such as FSA's payment calculator, loan application packages, conditional commitments, guaranteed obligation requests, etc., which contain information on loan amounts, loan purposes, and personally identifiable information. The payment calculator includes "principal amount, interest rate, term in months, term in quarters, monthly payment, and quarterly payment" (Exh. E at 38).

Information properly withheld under Exemption 3, as discussed above, does not require further analysis under Exemption 6 so this Exemption 6 analysis only pertains to the withholding of payment information and other information falling outside of Section 8791's scope.

Given the "broad, rather than narrow, meaning" of "similar files," this order finds that loan applications and information referencing those applications are covered by reference in Exemption 6 to "similar files" because they contain financial and other sensitive personal information. *U. S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600 (1982).

This order acknowledges the D.C. Circuit's analysis of the Exemption 6 balancing inquiry on large FSA databases containing information on crops and field acreage for farms and aerial photographs used to determine farm acreage and crop types used to create maps of

farmland. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1226–27 (D.C. Cir. 2008). Information in these databases allowed FSA to "monitor compliance with regulations governing farm benefits." *Id.* at 1227. The D.C. Circuit held that the requested information constituted "similar files" under Exemption 6 because the files implicated "financial information in business records" of businesses that were "individually owned or closely held, and the records would necessarily reveal at least a portion of the owner's personal finances." *Id.* at 1228–29.

Though privacy interest in the records at issue in *Multi Ag Media* implicated closely-held businesses and satisfied the "greater than de minimis" threshold under Exemption 6, the D.C. Circuit held that disclosure did not constitute a "clearly unwarranted invasion of privacy" because the public interest outweighed the privacy interest as the requested information "allow[ed] the public to more easily monitor USDA's administration of its subsidy and benefit program." *Id*. at 1232–33.

So too here (at least with regard to information improperly withheld under Exemption 3 via Section 8791).

It has been suggested by our court of appeals that Section 8791 intended to curtail the D.C. Circuit's expansive approach to the release of GPS data in *Multi Ag Media*. *Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1117 (9th Cir. 2010). However, our court of appeals' commentary on the relationship between Section 8791 and *Multi Ag Media* never reached an Exemption 6 analysis, instead finding that Section 8791's protection of "geospatial information" under Subsection (2)(B) clearly applied to the information at issue (GPS coordinates related to the USDA's wolf depredation program). *Id.* at 1118–19. No Exemption 6 consideration was needed.

Here, some of the information cannot be withheld based on Section 8791 and an Exemption 6 analysis is needed. The *Multi Ag Media* model, therefore, is still persuasive in our case.

As in *Multi Ag Media*, the files at issue here do implicate "similar files" that relate to the personal finances "individually owned or closely held businesses." At the hearing on this

11

motion, plaintiffs argued that even though loan payments do indicate the financial state of individual farmers and small family farms, they do not reveal the whole picture and therefore do not represent a weighty privacy interest. This order agrees. Especially compared to the information at issue in *Multi Ag Media* — crop information, acreage, and maps directly related to the value of farmers' land and production capabilities — loan information gives a mere peek into farmers' finances but does not bear as direct a relationship to the value of their land or their financial situation. The privacy interest in information related to the loan program's administration is more than de minimis but not particularly weighty in our case.

Also, just as in *Multi Ag Media*, there is a substantially weighty public interest in administration of FSA programs that disburse taxpayer dollars. The public cannot understand the loan program without knowing loan payment amounts, names and addresses of recipients, and earmarks for those federal funds.

The public interest in payment information, therefore, outweighs farmers' privacy interest in that information and must be disclosed. On the other hand, information that reveals sensitive personally-identifiable information (such as social security numbers, bank account information, personal assets, etc.) should be withheld because this information would make individuals vulnerable to identity theft and do not illuminate FSA's administration of the farm loan program.

## CONCLUSION

The FSA is ordered to apply the foregoing rulings in responding to the FOIA requests at issue.

**IT IS SO ORDERED.**

Dated: May 10, 2021

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE